UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

John Maczko, et al,

    Plaintiffs,

vs                                                            Case No: 08-13819
                                                           Honorable Victoria A. Roberts

Ford Motor Company,

    Defendant.
_____/

## ORDER

### I. INTRODUCTION

John Maczko, Cynthia Alsman, Keith Crutchfield, Edward Fowlkes, Fred Kasten, Daniel Kozoro, John Mastropietro, Jeffrey Nowakowski, Jim Robertson, Frank Schaller, Thomas Sep, Joseph Wojciechowski, and Kenneth Brauning filed a complaint against Ford Motor Company ("Ford") in September, 2008. Different individuals - - Dean Elwart, Thomas Stall, and Thomas Vaughn - - filed a separate complaint against Ford in December, 2008. The Court refers to both sets of Plaintiffs as "Plaintiffs." Plaintiffs allege that Ford violated § 510 of the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. § 1140, by intentionally interfering with Plaintiffs' attainment of enhanced severance benefits under the Salaried Income Security Plan, ("SISP").

Ford filed Motions to Dismiss in both cases. The allegations in the Complaints are sufficiently similar, as are the Motions, and the *Elwart* Plaintiffs describe themselves as similarly situated to the *Maczko* Plaintiffs. *Elwart, Resp.* at 8. Accordingly, the Court treats them as companion cases for the purposes of the pending motions.

1

Ford's Motions are **DENIED**.

## II. BACKGROUND AND PROCEDURAL HISTORY

Ford is an automotive manufacturer. Visteon was an automotive parts manufacturer and a wholly-owned subsidiary of Ford until June 28, 2000, when Ford distributed its entire interest in Visteon to Ford shareholders. Ford did not retain equity in Visteon; Visteon became an independent, publicly traded corporation. Plaintiffs in both cases, and certain other salaried Ford employees, were required to transfer employment to Visteon when Ford distributed its Visteon interest to shareholders. Around January 1, 2006, Plaintiffs were transferred back to Ford, when Visteon returned certain facilities to Ford; they were assigned new Ford service dates.

In June, July, and August of 2008, Ford implemented a major reduction-in-force ("RIF") of its salaried workforce. Employees who were separated as a result of the RIF were offered a one to thirteen month severance package according to the SISP. The amount of severance offered to each salaried employee was based on the employee's company service date. Plaintiffs' severances were based on the dates they transferred from Visteon back to Ford, instead of the dates on which Ford initially hired them.

This is one of a series of actions brought by Ford employees challenging the legality of their classifications as "rehired," rather than "reinstated," when they returned to Ford after temporary employment with Visteon.

In a case where only circumstantial evidence was presented and pension benefits were at issue, the Sixth Circuit found that Plaintiffs, who were also transferred to Visteon and returned to Ford, "were not employees of Ford during their Visteon

2

employment" and therefore, "classifying them as Ford rehires cannot constitute an adverse action under § 510." *Nycholas v. Ford Motor Co.*, Slip. Op. No. 09-1470 (6th Cir. March 10, 2010). In other words, the Court found the classification of the *Nycholas* plaintiffs as "rehired," was appropriate.

The parties stipulated to a stay pending the outcome of *Nycholas*, agreeing that, "[t]he Plaintiffs' claims in the instant case are **similar** to the plaintiffs' claims in *Nycholas*, such that the decision of the Sixth Circuit **may** affect the outcome of the instant case." Stipulation for Stay, 5/06/09 (emphasis added).

Ford contends that the *Nycholas* case controls; it says the allegations in Plaintiffs' Complaints are identical to those in *Nycholas*. Plaintiffs say the facts in their Complaints are distinguishable from those in *Nycholas,* since they involve different benefits - - pension benefits in *Nycholas* and severance benefits here - - and the evaluation of evidence of alleged interference with enhanced severance benefits is subject to different burdens of proof.

To redress the alleged violation of § 510 of ERISA, Plaintiffs request: (1) a declaration that SISP is an ERISA plan; (2) a declaration that Ford violated Plaintiffs' rights under § 510 of ERISA when Ford classified them as "rehires"; (3) an award of severance plan benefits, or other monetary compensation; and (4) an order of equitable relief the Court deems necessary to restore benefits to Plaintiffs, and to enforce their rights under ERISA.

## III. STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) Motion, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). Because a Rule 12(b)(6) motion rests upon the pleadings rather than the evidence, it is not the function of the court in ruling on such a motion "to weigh evidence or evaluate the credibility of the witness." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). While this standard is decidedly liberal, it requires more that the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). The Court does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ascroft v.Iqbal,* 129 S.Ct. 1937, 1949 (2009) *(citing Twombly,* 550 U.S. at 556)*.* The complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *DeLorean*, 991 F.2d at 1240.

## IV. APPLICABLE LAW AND ANALYSIS

The pertinent portion of § 510 of ERISA states: "It shall be unlawful for any person to discharge . . . a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140. "By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting . . . [or] circumvent

4

the provision of promised benefits." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133 (1990).

Ford says the issue presented is this: whether the classification of Plaintiffs as "rehires," rather than "reinstated," is actionable under § 510. Ford says this issue was litigated in *Nycholas,* and is now barred by *stare decisis*. *Maczko*, *Mot*. at 5-6. Plaintiffs articulate the issue differently. They say it is: whether Ford can defend against direct evidence that it singled out Plaintiffs' severance benefits for interference. Framed in that manner, Plaintiffs say their claim was not litigated in *Nycholas,* and is not barred by *stare decisis*. *Maczko*, *Resp*. at 11-12.

### A. *Stare Decisis*

According to the Sixth Circuit:

> . . . [W]hen a point has been once settled by judicial decision, it forms a precedent for the guidance of courts in similar cases, precedents which cannot be distinguished should be followed until modified or overruled, and the interest of uniformity, certainty and stability in the law [is] thus promoted.

*Cold Metal Process Co. v. E.W. Bliss Co.*, 285 F.2d 231, 236 (6th Cir. 1960),

The Court finds that Ford's reliance on *Nycholas* as *stare decisis* is premature for two reasons. First, the *Nycholas* case was dismissed at the summary judgment stage, not on a motion to dismiss. Second, the *Nycholas* plaintiffs offered circumstantial evidence to prove Ford's intent to interfere with pension benefits; here, Plaintiffs assert direct evidence of Ford's intent to interfere with severance benefits. The burden of proof Plaintiffs have at the pleading stage is different than at the summary judgment stage. Moreover, a different legal analysis is invoked when direct evidence is proffered. *See*

*Furcini v. Equibank, NA,* 660 F.Supp. 1436, 1441 (W.D. Pa. 1987) (noting that the doctrine of *stare decisis* does not apply when the previous case relied on direct evidence and the pending case relies on circumstantial evidence.)

The *Nycholas* plaintiffs met their initial burden to state a claim against Ford for unlawful interference with pension benefits. *Nycholas*, Slip. Op. No. 09-1470 (6th Cir. 2010). Ford successfully rebutted the presumption by introducing evidence of a legitimate, nondiscriminatory reason for its challenged action, i.e. the B-106 directive. *Id.* However, plaintiffs failed to demonstrate that the proffered reason constituted mere pretext. The Court stated, "Because the Directive stripped the Plaintiffs of any legitimate expectation that Ford would credit their Visteon-service years when calculating Ford pension benefits, their § 510 claim fails." *Id.*

*Nycholas* demonstrates that plaintiffs failed to meet their second burden under the circumstantial burden-shifting analysis. Further, it was because of the "directive" that the plaintiffs lost their case. There is no mention of such directive in the *Maczko* or *Elwart* Pleadings. *Nycholas* does not stand for the proposition that whenever an employer classifies persons as "rehired," rather than "reinstated," that those employees do not have an actionable claim under § 510.

### 1. *Nycholas* Is Not controlling Because it Was a Summary Judgment Motion, not a Motion to Dismiss.

*Nycholas* upheld a grant of summary judgment in favor of Ford. To avoid summary judgment, a plaintiff must present significant probative evidence in support of the complaint. *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir. 1995); there must be evidence on which a jury could reasonably find for the plaintiff. *Snyder v. AG Trucking*

*Co.,* 57 F.3d 484, 488 (6th Cir. 1995).

At the 12(b)(6) stage - - which is the posture of these cases - - it is not the courts function to weigh the evidence. *Miller*, 50 F.3d at 377 (6th Cir. 1995). "[W]e construe the [C]omplaint in the light most favorable to the [P]laintiff, accept its allegations as true, and draw all reasonable inferences in favor of the [P]laintiff[.]" *DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). A 12(b)(6) motion only tests whether the basic pleading requirements are met, not the probability of success on the merits. *See Tacket v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488-89 (6th Cir. 2009) (citing *Twombly,* 550 U.S. 544, 555); *Tucker v. Union of Needletrades, Industrial & Textile Employees,* 407 F.3d 784, 788 (6th Cir. 2005).

Plaintiffs allege that email correspondence between high level Human Resources personnel at Ford, which indicates Ford would only provide one month pay for transferred employees and would not recognize Visteon service, is direct evidence of Ford's unlawful intent to interfere with Plaintiffs' severance benefits. Taking the allegations in the Complaint as true, and in the light most favorable to the Plaintiff, this email could be considered evidence of Ford's unlawful intent. Although it uses cryptic language, the email describes Post Transfer Organization Motivators as "Free headcount - more is better" and "Ford liable for FISSP[1] - 1 month pay for transferred employees-does not recognize Visteon service[.]" This email could demonstrate that "rehiring" Plaintiffs instead of "transferring" them, amounts to specific intent to interfere with severance benefits. *See Ndene v. Columbus Academy,* 2010 WL 1031864, at *3 (S.D. Ohio 2010) ("Whether the alleged [email] require[s] an evidentiary inference in

---

[1] The FISSP was the acronym used to refer to the severance plan that was the predecessor to the SISP.

7

order to amount to [unlawful intent] is not a matter to be resolved at this stage of the proceedings.")

### 2. *Nycholas* is not controlling because those plaintiffs' relied on circumstantial evidence not direct evidence

A claim for violation of § 510 of ERISA may be shown by: (1) direct evidence of the employer's intent to interfere with employee benefits; or (2) circumstantial evidence of the employer's intent to interfere with employee benefits. When circumstantial evidence is offered, plaintiffs must demonstrate: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992).

Direct evidence, if believed, requires the conclusion that unlawful intent to interfere was at least a motivating factor in the employer's actions. *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). With direct evidence, a fact finder does not need "to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by [unlawful intent]." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003).

Circumstantial evidence invokes a burden-shifting analysis. *Nycholas*, Slip. Op. No. 09-1470 (6th Cir. 2010). If plaintiffs are successful in demonstrating the three parts specified above, the employer ". . . may rebut the presumption of impermissible action by introducing evidence of a legitimate, nondiscriminatory reason for its challenged action. To prevail, then, [p]laintiffs must demonstrate that [the employer's] proffered reason constitutes mere pretext." *Id.* The Sixth Circuit also requires plaintiffs "to show a

causal link between [the employer's] adverse decision and their loss of benefits, specifically, evidence from which a reasonable jury could find that the defendant's desire to avoid pension liability was a determining factor in [the employer's] allegedly discriminatory action against [p]laintiffs." *Id.* (Internal quotes and citations omitted).

The doctrine of *stare decisis* has no bearing on these Plaintiffs' claim. *Furcini,* 660 F.Supp. at 1441. *Nycholas* involved circumstantial evidence of illicit purpose. Accordingly, the court did not evaluate what effect, if any, direct evidence would have on the evaluation of a similar ERISA claim which relied on different proofs. *Id.* In contrast to *Nycholas*, Plaintiffs produce what they say is direct evidence, "an e-mail correspondence between high level [Human Resources] personnel from Ford Motor Company . . . numbered for discovery purposes as 'FMC05525 CONFIDENTIAL - FMC05526 CONFIDENTIAL.' *Maczko Resp.* 8. In describing this evidence, Plaintiffs' Response states:

> In relevant part, this document identifies 'Visteon Motivators' and 'PTO Motivators' governing the transfer of Plaintiffs to Ford Motor Company in 2006 . . . The document also identifies the following 'PTO [Post Transfer Organization] Motivators' - 'Free headcount-more is better' and 'Ford liable for FISSP - 1 month pay for transferred employees-does not recognize Visteon service[.]'

*Id.*

Since this case relies on direct evidence, it is distinguished from *Nycholas*. It has not been settled by judicial decision, and it would be premature to dismiss Plaintiffs' Complaints.

    **B.**    **Plaintiffs' have sufficiently pled a claim to survive Ford's motion**

The pertinent portion of § 510 of ERISA states: "It shall be unlawful for any person to discharge . . . a participant . . . for the purpose of interfering with the

9

attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140.

To successfully plead a § 510 claim, Plaintiffs must allege facts that show they were: (1) participants, (2) discharged by their employer (3) for the purpose of interfering with their rightful benefits. Plaintiffs allege that they were employees of Ford at the Rawsonville or Sterling Heights plants, i.e., participants. Plaintiffs further allege that they were classified as "rehires" when they were "transferred" back to Ford from Visteon or Automotive Components Holdings, Inc., i.e., discharged. Finally, Plaintiffs allege that this misclassification, which caused them to lose several months of severance pay, was a direct result of Ford's intentional interference with ERISA protected benefits. These facts demonstrate a short and plain statement of the claim showing the pleader is entitled to relief, as required by Federal Rules of Civil Procedure 8(a)(2).

### C. *Res judicata*

Ford also argues that Plaintiffs' claims are barred by *res judicata*. The Court disagrees.

In *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir. 1997) (emphasis omitted), the Court states:

> Under [the Sixth Circuit's] articulation of *res judicata*, a claim will be barred by prior litigation if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent litigation which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

Ford alleges all four elements of *res judicata* are met. However, Ford's reliance on *res judicata* fails on the second, third, and fourth elements. This action is not

between the same parties or their "privies." Further, SISP could not have been litigated in the prior action, since Plaintiffs allege they are governed by different plans and plan terms than the *Nycholas* plaintiffs. Finally, there is not an identity of the causes of action because *Nycholas* was evaluated under the burden-shifting analysis of the circumstantial evidence test, and Plaintiffs produced what they consider direct evidence.

**1.    The Second Element: A subsequent action between the same parties or their "privies"**

There are four ways to meet this element: (1) same parties, (2) privies, (3) non-party preclusion, and (4) virtual representation. *See Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 2173-74 (2008) (Plaintiffs will be deemed represented, i.e. virtually represented, in the prior suit when, the plaintiffs in the first suit are suing on behalf of a class, the original complaint asserts a complaint on behalf of non-parties, and the judgment specifically binds non-parties.) Plaintiffs' claim does not involve a subsequent action between the same parties or their privies. Nor has Ford made a persuasive argument that non-party preclusion or virtual representation should apply. Thus, *res judicata* does not serve as a bar to Plaintiffs' claim.

**a.    Parties or "privies"**

*Nycholas* cannot be considered a prior action between the same parties because there was no certified class in *Nycholas,* and the Plaintiffs were not parties to the prior litigation. *Id.*

Section 41 of the Restatement (Second) of Judgments, in accordance with the Supreme Court opinion in *Richards v. Jefferson County,* 517 U.S. 793 (1996), "does not permit the extension of the [privity doctrine] to the instant case because the plaintiff was

not a class member bound by a previous adjudication and does not fit any other category of persons 'represented' by a party in the previous action." *Bittinger*, 123 F.3d at 880. The same is true here: Plaintiffs were not represented in *Nycholas*, and they cannot be considered privies to that action.

      **b.**      **Non-party preclusion**

Generally, *res judicata* does not apply to persons who are not parties or their privies in a former suit. *Res judicata* has been held to apply to six categories of persons who were not parties to the prior litigation. *See generally Richards,* 517 U.S. 793 and *Sturgell,* 128 S.Ct. 2161. First, a non-party who agrees to be bound "is bound in accordance with the terms of his agreement." *Id.* at 2172. Second, nonparty preclusion may apply when there is a "pre-existing substantive legal relationship" between the non-party and the party in the judgment. *Id.* Third, preclusion applies in certain limited circumstances, if the nonparty was adequately represented by a party to the suit with the same interests, including "properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries[.]" *Id.* at 2172-73. Fourth, "a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered . . . Because such a person . . . has already had his day in court." *Id.* at 2173. Fifth, "a party bound by a judgment may not avoid its preclusive force by re-litigating through a proxy." *Id.* (That is, a party in the first case cannot appoint a non-party to re-litigate the same claim in a second case.) Sixth, "in certain circumstances[,] a special [statute] may expressly foreclose successive litigation by non-litigants if the [statute] is otherwise consistent with due process." *Id.* at 2172-73 (internal quotes and citations omitted).

In *Sturgell*, the first plaintiff filed suit after he was denied access to documents pertaining to a particular aircraft. *Id.* at 2167-68. He lost the suit on the basis of trade-secret protection. *Id.* The appeals court "noted that [he] had failed to challenge two suppositions underlying the District Court's decision." *Id.* The second plaintiff was similarly denied access to the same documents and filed a suit which included challenges to those two suppositions. *Id.* Yet, the Court found that none of the six categories of nonparty preclusion applied. The court specifically addressed the third category, i.e., adequate representation, when it stated, "Nothing in the record indicates that [the first plaintiff] understood himself to be suing on the [second plaintiff's] behalf, that [the second] even knew of [the first] suit, or that the [court] took special care to protect [the second plaintiff's] interests." *Id.* at 2178. Therefore, the court held representation was not adequate. *Id.* at 2178-79.

Because only two of the six categories are applicable to this case, this Court addresses agreement to be bound, the first category, and adequate representation, the third category. In regard to the first category, there was no agreement between these Plaintiffs to be bound by the outcome in *Nycholas.* Stipulating to stay the proceedings due to similarities which may affect the outcome cannot be interpreted to mean an agreement to be bound by the outcome. In addition, the Court agrees with the policy considerations set forth by Plaintiffs - - that allowing Defendants' strategic use of stay proceedings will discourage parties "from cooperating on stays in other cases." *Maczko Resp.* at 16.

With regard to the third category, these Plaintiffs were not adequately represented in *Nycholas*. Nothing suggests Nycholas understood himself to be

13

representative of these Plaintiffs. And, mere knowledge of the *Nycholas* litigation is insufficient to suggest that the interests of these Plaintiffs were adequately represented, or that the Court took care to protect their interests. Moreover, the *Nycholas* suit does not fall within one of the subcategories articulated by the Supreme Court as qualifying for adequate representation, i.e. class actions, and suits brought by trustees, guardians and other fiduciaries. *Sturgell,* 128 S.Ct. at 2172-73.

Ford relies on *Ruiz v. Comm'r of Dep't of Transp.,* 858 F.2d 898 (2nd Cir. 1988), for the proposition that there is sufficient privity between Plaintiffs and the *Nycholas* plaintiffs to invoke the doctrine of *res judicata. Ruiz* is distinguishable. In *Ruiz,* there were several factors that caused that court to apply the doctrine of *res judicata* to bar the subsequent suit. First, the parties in the first and second suit had the same attorney in actions brought at about the same time. Second, there was a stipulation in open court that the second complaint would be amended to include the claims of the first. Third, the names of the parties in both cases appear on lists submitted to the Traffic Violations Bureau providing for the stay of the pending summons proceedings. Fourth, not only did the subsequent appellants contribute to strategy in the first action, they directly benefitted from the state court's interim orders. *Id.* at 903, 904. Perhaps most importantly, *Ruiz* specifically addressed the applicability of *res judicata*. The Court said, traditional legal principles generally demand "both an identity of the issues and an identity of parties between the prior and subsequent suits before operation of the *res judicata* doctrine is triggered." *Id.* at 902. *Ruiz* involved both identity of the issues and the parties, and application of *res judicata* made sense.

Here, while the parties in both actions are represented by the same attorney, there was no stipulation to amend the Complaints to include the allegations in *Nycholas*. And, as previously noted, a stipulation to stay is not an agreement to be bound. Any benefit Plaintiffs received by staying these proceedings is not sufficient to rise to the similarities found in *Ruiz*. There is not an identity of the issues, and the benefit at issue here, SISP, is not the same as the pension benefit at issue in *Nycholas*. Neither is there an identity of the parties. *Ruiz* is distinguishable and not controlling.

### c. Virtual Representation

Beyond the six established categories of non-party preclusion, some courts suggest an expansive doctrine of virtual representation. *See generally Taylor v. Blakey*, 490 F.3d 965, 970-71 (D.C. Cir. 2007). When courts apply the doctrine, at least one of three elements must be present: (1) the plaintiffs in the first suit must be suing on behalf of a class; (2) the original complaint must assert a complaint on behalf of non-parties; and (3) the judgment should specifically bind non-parties. *Sturgell,* 128 S.Ct. at 2173-74. The Court explained:

> In *Richards*, [The Supreme Court] reviewed a decision by the Alabama Supreme Court holding that a challenge to a tax was barred by a judgment upholding the same tax in a suit filed by different taxpayers. The plaintiffs in the first suit did not sue on behalf of a class, their complaint did not purport to assert any claim against or on behalf of any nonparties and the judgment did not purport to bind nonparties.

*Id.* at 2173-74*.* (internal quotes and citations omitted).

Moreover, *Bittinger,* 123 F.3d at 881, describes a multi-factored balancing test that can be used to evaluate the relationship between the parties in the first and second suit. Accordingly, the virtual representation doctrine is more likely to apply if there is a

15

"close non-litigating relationship, participation, apparent acquiescence, discussions about the first action, deliberate maneuvering to avoid the effects of the first action, and an express or implied legal relationship in which parties to the first suit are said to be 'accountable to the parties to the second." *Id.*

In *Sturgell,* the Supreme Court rejected the virtual representation exception. First, the general rule is, a litigant is not bound by a judgment to which she was not a party. 128 S.Ct. at 2175, *see e.g.* **Richards, 517 U.S. at 798-99**. S**econd,** "virtual representation rests on the limitations attending nonparty preclusion based on adequate representation." *Sturgell,* 128 S.Ct. at 2176. A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty. *Id. See Richards*, 517 U.S. at 80-02. *Sturgell* reasoned that virtual representation would allow "common-law" or "*de facto*" class actions, circumventing the limitations and "procedural safeguards contained in Federal Rule of Civil Procedure 23." *Sturgell,* 128 S.Ct. at 2176. Third, there is "no clear test for determining [its] applicability." *Id.* The Court found that virtual representation is an expansion of non-party preclusion, and that *res judicata* only applies when one of the recognized categories of non-party preclusion is applicable. *Id.* at 2178.

The *Nycholas* plaintiffs did not sue on behalf of a class; the original complaint did not assert a complaint on behalf of Plaintiffs; and, the *Nycholas* judgment did not specifically bind these Plaintiffs. Furthermore, Plaintiffs do not have a close non-litigating relationship with the *Nycholas* plaintiffs. These Plaintiffs did not participate in

16

the *Nycholas* litigation, nor did they deliberately maneuver to avoid the effects of *Nycholas*. There was no legal relationship causing the *Nycholas* plaintiffs to be accountable to these Plaintiffs. Stipulating to the stay cannot be deemed "apparent acquiescence," but even if it was, the presence of "apparent acquiescence" plus "discussions about the first action," is significantly outweighed by the absence of the other elements. Additionally, while the interests of Plaintiffs in *Maczko* and *Elwart* and plaintiffs in *Nycholas* are aligned, nothing in the record indicates that the *Nycholas* plaintiffs understood themselves to be representing the Plaintiffs, or that the Court took care to protect their interests. As a matter of law, the Court finds that Plaintiffs were not represented in the *Nycholas* suit.

## 2. An identity of the causes of action

In *Sturgell,* the Court did not apply the doctrine of *res judicata,* even though the causes of action were identical. 128 S.Ct. 2161, 2168. Both plaintiffs sought the release of documents pertaining to a particular aircraft. *Id.* When the first plaintiff was denied access to the documents he sued, and lost, based on trade-secret protection. *Id.* The appeals court "noted that [he] had failed to challenge two suppositions underlying the District Court's decision." *Id.* It was these two suppositions that the second plaintiff sought to litigate. *Id.*

While the Plaintiffs' Complaints are similar to that in *Nycholas*, for the reasons the Court finds these cases distinguishable for the purposes of *stare decisis,* they are likewise distinguishable for purposes of *res judicata.*

17

## V. CONCLUSION

The Court **DENIES** Ford's Motions to Dismiss.

**IT IS ORDERED**.

                                                /s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: December 16, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 16, 2010.

s/Linda Vertriest
Deputy Clerk

---